Marion J. Radson City Attorney City of Gainesville
QUESTION:
1. May the Law Enforcement Contraband Forfeiture Trust Fund be used to create and fund a police athletic league providing recreational activities for disadvantaged youths in order to deter or prevent crime?
2. May the Law Enforcement Contraband Forfeiture Trust Fund be used for hiring a consultant to plan neighborhood jurisdictions recommended by the Gainesville Safe Neighborhood Advisory Board?
SUMMARY:
1. A police athletic league with the primary purpose of preventing crime by providing recreational programs for disadvantaged youths may be supported with contraband forfeiture funds, if the governing body of the city determines that such activities are an appropriate law enforcement purpose.
2. Contraband forfeiture funds may not be used to hire a consultant to plan jurisdictions for the Safe Neighborhood Advisory Board, since such a position is not located within the city's police department.
The Florida Contraband Forfeiture Act, ss. 932.701-932.704, F.S., authorizes the law enforcement agency effecting a forfeiture of seized property to sell or otherwise salvage or transfer the property to any public or nonprofit organization rather than retaining it for the use of the law enforcement agency.[1]
If forfeited property is sold, proceeds are first applied to any preserved lien balances, then to various costs incurred in connection with the forfeiture proceedings. The remaining proceeds are deposited in a special law enforcement trust fund established by the board of county commissioners or the governing body of the municipality.[2]
Section 932.704(3)(a), F.S. (1990 Supp.), in pertinent part, provides:
 [S]uch proceeds and interest earned therefrom shall be used for school resource officer, crime prevention, or drug education programs or for other law enforcement purposes. These funds may be expended only upon request by the sheriff to the board of county commissioners or by the chief of police to the governing body of the municipality, accompanied by a written certification that the request complies with the provisions of this subsection . . . . Such funds may be expended only to defray the costs of protracted or complex investigations; to provide additional technical equipment or expertise, which may include automated fingerprint identification equipment and an automated uniform offense report and arrest report system; to provide matching funds to obtain federal grants; or for school resource officer, crime prevention, or drug abuse education programs or such other law enforcement purposes as the board of county commissioners or governing body of the municipality deems appropriate and shall not be a source of revenue to meet normal operating needs of the law enforcement agency. (e.s.)
This office has previously interpreted the limitations upon these of forfeiture funds. In AGO 89-78, this office considered whether forfeiture funds could be used to supplement police academy tuition for recruits who would become employed by a municipal police department. It was concluded that payment of police salaries wa a normal operating expense which could not be augmented with forfeiture funds. Furthermore, the recruitment of cadets was found to be a recurring and routine activity of a law enforcement agency which could not be paid from such funds.
In a letter to your police chief, Mr. Wayland Clifton, Jr.,[3]
this office addressed whether the City of Gainesville could use contraband forfeiture funds to pay the salary and benefits of a full-time legislative liaison who was to develop statewide legislation for criminal justice assessment centers. This office concluded that contraband forfeiture funds could be used in light of the nonrecurring limited duration of the position, if the position fell outside the normal operating needs of the municipal law enforcement agency and the municipal governing body determined that it fulfilled an appropriate law enforcement purpose.
In addition to contraband forfeiture funds being restricted to use for law enforcement purposes as determined by the municipal governing body, the chief of police must make a request that the funds be spent for such purposes and certify that the request complies with s. 932.704(3)(a), F.S. (1990 Supp.).[4]
Absent such a request, the city commission would not be authorized to expend contraband forfeiture funds. Inasmuch as the Legislature has restricted the manner in which contraband forfeiture funds may be used, any expansion or limitation on such uses must be effected through legislative amendment.
AS TO QUESTION 1:
This office has been advised that the police athletic league would be a vehicle to provide a youth recreational program coached by volunteer police officers. The police department seeks to implement a crime prevention program aimed at disadvantaged youths which would be separate from other city recreational programs. the program would be coordinated through the city recreation department, with activities primarily taking place at city facilities. The main thrust of the program is to reduce crime, provide recreational activities for disadvantaged youths and to augment city services.
As presented, the primary goal of the proposed athletic league is to prevent or reduce crime by establishing rapport between law enforcement officers and disadvantaged youths and directing such youths away from criminal mischief by otherwise occupying their time. While achieving these goals by providing recreational activities supervised by volunteer police officers may not be a traditional crime prevention method, reduction or preventing crime is a valid use of contraband forfeiture funds.
This office has previously stated that the legislative intent of s. 932.704, F.S., is that "trust funds should be used only for the expressly specified purposes or for other extraordinary programs and purposes, beyond what is usual, normal, regular or established."[5] "Crime prevention" is one of the expressly stated purposes for which contraband forfeiture funds may be expended. Furthermore, there is no indication that providing such recreational activities is a normal operation of the municipal police department.
Accordingly, it is my opinion that contraband forfeiture funds may be used to create a police athletic league which provides a recreational outlet for disadvantaged youths, if the chief of police requests the expenditure of such funds and certifies that the expenditure complies with s. 932.704, F.S. (1990 Supp.), and the governing body of the city determines that such a program serves an appropriate law enforcement purpose. Such a program, however, must be outside the normal operating needs of the police department.
AS TO QUESTION 2:
The "Safe Neighborhoods Act," (act) Part IV, Ch. 163, F.S., as amended by Ch. 91-86, Laws of Florida, serves "to assist local governments in implementing plans that employ crime prevention through environmental design, environmental security, and defensible space techniques to establish safe neighborhoods."[6]
The primary purpose of the act appears to be to provide a method whereby local governments can implement plans for crime prevention to ensure safe neighborhoods.
The act provides that if a municipality or county elects to create a safe neighborhood improvement district, it is eligible to request a grant from the Safe Neighborhoods Trust Fund to prepare a sage neighborhood improvement plan for the district.[7]
The act recognizes, however, that municipalities or counties may create safe neighborhood improvement districts without planning funds from the trust fund.[8] The act does not provide direction for alternative sources for funding the preparation of the plan.
Section 932.704(3)(a), F.S. (1990 Supp.), requires that the chief of police request an expenditure from the governing body of the city and certify in writing that it satisfies the requirements of the subsection. The requested funds may be spent "[o]nly uponappropriation to the . . .police department by the . . . governing body of the municipality." (e.s.) Thus, while the city commission is responsible for appropriating contraband forfeiture funds, such funds may only be appropriated to the police department.
In AGO 91-39, this office considered whether a school district security department, which had been granted a law enforcement functions pursuant to a special act, was a law enforcement agency which may share in the proceeds from a contraband forfeiture proceeding. While officers of the security department appeared to be law enforcement officers due to their powers under the special act, it was concluded that the school district's security department did not fall within the law enforcement agencies enumerated in the contraband forfeiture act which may share in the proceeds from a contraband forfeiture proceeding.
In light of the plain language of s. 932.704(3)(a), F.S. (1990 Supp.), limiting appropriations to the police department and the conclusion in AGO 91-39, it is my opinion that only those law enforcement services or activities located within the city's police department would be eligible to receive contraband forfeiture funds for law enforcement purposes.
This office has been advised that the Safe Neighborhood Advisory Board is under the city commission and is not located within the city's police department. While the role of a consultant to the advisory board may serve a purpose to prevent crimes, a position which is located outside the city's police department would not be eligible for contraband forfeiture funds.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tls
[1] Section 932.704(3)(a), F.S.
[2] Id.
[3] Informal Opinion to Mr. Wayland Clifton, Jr., dated September 17, 1990.
[4] See, AGO 91-69, in which this office concluded that a request for expenditures from the contraband forfeiture fund must originate from the sheriff, as head of the law enforcement agency in the county and, absent such a request, the county government was not authorized to expend confiscated funds pursuant to the act.
[5] See, AGO 83-9.
[6] Section 163.502(4), F.S., as amended by s. 2, Ch. 91-86, Laws of Florida. See, s. 163.503(5), (6), and (7), F.S., defining "[e]nvironmental security," "[c]rime prevention through environmental design" and "[d]efensible space."
[7] Section 163.504(2), F.S., as amended by s. 5, Ch. 91-86, Laws of Florida.
[8] Section 163.504(3), F.S., as amended by s. 5, Ch. 91-86, Laws of Florida.